**Vivienne BONO, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV A 99–535 JCL.**

United States District Court, D. New Jersey.

March 7, 2001.

Nicholas Anthony Mattera, Hackensack, NJ, for Plaintiff.

Pamela R. Perron, Office of the U.S. Attorney, Newark, NJ, for Defendant.

## MEMORANDUM AND ORDER

LIFLAND, District Judge

Presently before the Court is a motion by defendant United States of America (hereinafter "United States") to dismiss the complaint filed by plaintiff Vivienne Bono ("Bono") pursuant to *Fed.R.Civ.P.* 12(b)(1). The United States argues that Bono's claim does not fall within the scope of the Federal Tort Claims Act ("FTCA"), and that this Court therefore lacks subject matter jurisdiction over this action. Because the Court agrees, for the reasons set forth below, the United States' motion is granted.

## BACKGROUND

The present matter involves a tort claim raised by Bono against the United States, arising from a "slip and fall" accident allegedly caused by the negligent delivery of the mail by a letter carrier working for the United States Postal Service ("USPS"). The relevant facts as set forth in the complaint are summarized briefly below.

On or about April 12, 1996, USPS letter carrier Thomas DeRuvo ("DeRuvo") made a mail delivery to Bono's home consisting of letter-sized items as well as a larger piece of mail measuring approximately 6″ × 12″ × 1/2″, which was wrapped in cardboard and tied with a string. DeRuvo placed all the letter-sized items through the mail slot in Bono's front door. Because the larger piece of mail did not fit through the door slot, DeRuvo left it between the storm door and the front door of Bono's house.

When Bono retrieved her mail on April 12, 1996, she tripped over the piece of mail left between the storm door and front door. As a result of her fall, Bono sustained a trimalleolar fracture of the left ankle that required her to undergo surgery involving the placement of screws, pins, plates, and wires to stabilize the fracture.

Bono filed this action with this Court on February 5, 1999, alleging one claim of negligence and seeking damages for medical treatment and pain and suffering. On September 20, 2000, the United States filed the instant motion to dismiss the complaint for lack of subject matter jurisdiction, pursuant to *Fed.R.Civ.P.* 12(b)(1). A final pretrial order was filed on September 25, 2000.

## STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction questions the very power of a court to hear the case before it. *Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir.1997). In determining the merits of a facial challenge to subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1), the court must read the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. *United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). The burden of establishing subject matter jurisdiction lies with the plaintiff. *See Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir.1993); *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977).

## DISCUSSION

 In general, the United States is immune from civil suit by private parties, except where the United States has expressly consented to suit, as set forth by statute. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The Federal Tort Claims Act ("FTCA") describes one of the limited instances where the United States waives its sovereign immunity and consents to civil suit. *See* 28 U.S.C. § 1346(b), §§ 2671–80. Under the FTCA, a private party may sue the United States:

> for personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Although the FTCA provides that the United States may be sued for negligence "in the same manner and to the same extent as a private individual in like circumstances," 28 U.S.C. § 2674, the parameters of the FTCA must be strictly construed. *See Livera v. First National State Bank of New Jersey,* 879 F.2d 1186, 1194 (3d Cir.), *cert. denied sub nom., Livera v. United States Small Business Administration,* 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 322 (1989). Furthermore, Congress has expressly excluded thirteen different types of tort claims from the FTCA. *See* 28 U.S.C. § 2680(a)-(n); *see also United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). These exceptions are construed in favor of the sovereign. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). One of these statutory exceptions, § 2680(b), states that § 1346(b) does not apply to "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b).

The United States argues that Bono's complaint should be dismissed because it arises out of the negligent transmission of the mail, and therefore is expressly excluded from the FTCA under § 2680(b). The United States contends that legal precedent requires that § 2680(b) be construed broadly to encompass injuries resulting from the negligent delivery of mail, like Bono's claims here. Furthermore, the United States argues that the policies underlying Congress's passage of § 2680(b) strongly dictate in favor of dismissal here.

In *Kosak v. United States,* the Supreme Court offered some general guidance to interpreting the FTCA exceptions articulated by § 2680. *Kosak,* 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984). First, the Supreme Court instructed that "the proper objective of a court attempting to

construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the words and reason of the exception—no less and no more." *Kosak,* 465 U.S. at 854, 104 S.Ct. 1519 (internal citations omitted). The Court also identified three primary policy objectives underlying Congress's passage of § 2680 to limit the reach of the FTCA:

> The three objectives most often mentioned in the legislative history as rationales for the enumerated exceptions are: ensuring that "certain governmental activities" not be disrupted by the threat of damage suits; avoiding exposure of the United States to liability for excessive or fraudulent claims; and not extending the coverage of the Act to suits for which adequate remedies were already available.

*Id.,* at 858, 104 S.Ct. 1519. Although *Kosak* focused on the interpretation of one particular provision, § 2680(c), the Supreme Court indirectly considered the scope of § 2680(b) as well:

> One of the principal purposes of the Federal Tort Claims Act was to waive the Government's immunity from liability for injuries resulting from auto accidents in which employees of the Postal System were at fault. In order to ensure that § 2680(b), which governs torts committed by mailmen, did not have the effect of barring precisely the sort of suit that Congress was most concerned to authorize, the draftsmen of the provision carefully delineated the types of misconduct for which the Government was not assuming financial responsibility—namely, "the loss, miscarriage, or negligent transmission of letters or postal matter"—thereby excluding, by implication, negligent handling of motor vehicles.

*Id.,* at 855, 104 S.Ct. 1519.

There are few published cases addressing the scope of § 2680(b) in particular. Most of the courts that have examined the scope of § 2680(b) have done so in the context of postal materials being damaged, lost, or misdelivered by USPS employees. *See, e.g., Anderson v. United States,* 761 F.2d 527 (9th Cir.1985); *Insurance Company of North America v. United States Postal Service,* 675 F.2d 756 (5th Cir.1982). These courts have found that § 2680(b) clearly applies in this context and cloaks the United States with immunity from suit.

Two district courts that have recently confronted § 2680(b) in cases seeking damages for injuries resulting from the delivery of mail bombs have concluded that Congress intended that the postal exception be applied more expansively. In *Robinson v. United States,* the Court found that § 2680(b) barred parties from suing the United States in negligence for a death caused by the delivery of an exploding package. *Robinson,* 849 F.Supp. 799 (S.D.Ga.1994). Citing the Supreme Court's ruling in *Kosak,* the court in *Robinson* reasoned that "the prelude 'any claim arising out of' is certainly expansive," and therefore "evinces a legislative intent to broaden as opposed to limit the terms ... 'negligent transmission.'" *Robinson,* 849 F.Supp. at 801. Accordingly, the court in *Robinson* construed § 2680(b) broadly and found that the terms "negligent transmission of letters or postal matters" encompassed "acts of negligence by Postal Service employees regarding postal matter beginning when the postal matter was accepted by the Postal Service and ending when it was delivered." *Robinson,* 849 F.Supp. at 802. The court in *Robinson* also noted that its broad interpretation furthered the legislative policies of preventing the disruption of mail delivery and avoiding exposure to liability for excessive or fraudulent claims. *Robinson,* 849 F.Supp. at 802.

The district court in Nevada confronted a similar claim in *Gager v. United States*, where the plaintiffs tried to hold the USPS liable for a mail bomb death based on USPS's alleged failure to train USPS personnel to identify and isolate dangerous packages. *See Gager*, 958 F.Supp. 494 (D.Nev.1997), *aff'd*, 149 F.3d 918 (9th Cir.), *cert. denied*, 525 U.S. 966, 119 S.Ct. 412, 142 L.Ed.2d 335 (1998). There again the court held that the language of § 2680(b) was broad enough to encompass the plaintiffs' claim, and that this broad construction of the statute furthered Congress's policy objectives.[1] *Gager*, 958 F.Supp. at 496. On appeal, the Court of Appeals for the Ninth Circuit affirmed the lower court's ruling that the United States was immune from suit. *Gager*, 149 F.3d 918. However, the Court based its affirmance on § 2860(a), the "discretionary function" exception, and declined to consider whether the § 2860(b) postal exception also applied. *See id.*

Other case law has also delineated several firm limits to the reach of § 2680(b). For example, as noted above, the Supreme Court held in *Kosak* that the exception does not shield USPS from liability for injuries resulting from accidents caused by the negligent operation of postal vehicles. *Kosak*, 465 U.S. at 855, 104 S.Ct. 1519. In *Robinson*, the court suggested that § 2860(b) only applies to the handling of mail and does not apply to "other duties not directly involving postal matter," including vehicular accidents, as noted in *Kosak*. *Robinson*, 849 F.Supp. at 802. In

*Suchomajcz v. United States*, the district court for the Eastern District of Pennsylvania found that § 2680(b) is limited to claims in negligence and did not apply to a mail bomb case where USPS was charged with the intentional tort of accepting packages known to contain explosive substances.[2] *Suchomajcz*, 465 F.Supp. 474, 476 (E.D.Pa.1979).

■ Taking all of Bono's allegations as true, the instant complaint alleges that DeRuvo, acting on behalf of the USPS, an agency of the United States, negligently delivered a package at Bono's home, proximately causing her fall and her resultant injuries. This case does not involve the mere loss or miscarriage of mail, which § 2680(b) clearly covers. Rather, this case is more akin to *Robinson* and *Gager*, in that it involves personal injury resulting from the allegedly negligent delivery of mail by USPS personnel. Accordingly, the Court must carefully consider the plain meaning of the statutory language of § 2680(b) in deciding whether Bono's claim is barred by the United States' sovereign immunity.

In examining the plain meaning of the terms, "any claim arising out of the ... negligent transmission of letters or postal matter," this Court agrees with and adopts the interpretation and reasoning of *Robinson* that the exception covers acts of negligence by USPS employees regarding postal matter between the time that the postal matter is accepted through the time that it is delivered. *See Robinson*, 849 F.Supp. at 802. Moreover, it appears that

---

1. The court in *Gager* explicitly rejected the plaintiffs' attempt to avoid the result of *Robinson* by distinguishing the training of USPS employees from alleged negligence in the actual delivery of packages. The court explained that the plaintiffs "were not harmed by the failure to train in and of itself, but rather the delivery and process of opening the package." *Gager*, 958 F.Supp. at 496.

2. Notably, the district court in *Suchomajcz* defined the term "negligent transmission" in § 2680(b) as "the alteration or injury to a package or letter while in transit," clearly a more narrow definition of § 2680(b) than that adopted by any other court. *Suchomajcz*, 465 F.Supp. at 476. However, this Court could find no other court that has subsequently adopted this narrow construction.

Bono's claim is clearly encompassed within this definition. Bono charges the United States with negligence based upon DeRuvo's delivery of postal matter to her home. Bono's claim is directly related to the manner in which postal matter itself was delivered, and does not concern "the performance of other duties not directly involving postal matter," such as the operation of a postal vehicle. Thus, Bono's claim against the United States is barred under § 2680(b).

Finally, the Court notes that this ruling comports with the policy objectives identified in *Kosak* of ensuring that mail service is not disrupted by the threat of damage suits and avoiding exposure of the United States to liability for excessive or fraudulent claims.[3] *See Kosak*, 465 U.S. at 858, 104 S.Ct. 1519. Permitting suits against the United States for "slip and fall" claims based upon the delivery of postal materials would require USPS to divert significant resources from mail delivery to legal defense, and would likely disrupt USPS's ability to deliver mail. Furthermore, as noted by the United States in its briefs, exposing the United States to liability in suits of this type would likely lead to an inundation of "slip and fall" cases based on allegedly negligent mail delivery. *See* United States Brief, at 9. The potential for fraudulent claims is particularly high in cases of this type, where there are no witnesses to observe events after a letter carrier has completed his delivery.

In short, based on the statutory language, legislative history, and case law, the Court is confident that Congress intended § 2680(b) to provide the United States with immunity from claims such as the type Bono raises here. Because the United States is immune from suit, this Court lacks subject matter jurisdiction over the present matter, and Bono's claim must be dismissed pursuant to *Fed.R.Civ.P.* 12(b)(1).[4]

Accordingly **IT IS** on this —— day of March, 2001 **ORDERED** that defendant United States of America's motion to dismiss the complaint is granted.

---

**3.** The third policy objective identified in *Kosak*, "not extending the coverage of the Act to suits for which adequate remedies were already available," is not applicable here.

**4.** The United States also moves for dismissal for lack of subject matter jurisdiction based on 28 U.S.C. § 2680(a), the "discretionary function" exception to the FTCA. Because the Court finds that § 2680(b) bars Bono's claims, the Court does not consider whether § 2680(a) also applies here.