Alan GOODEN, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR, Bureau of Indian Affairs (BIA), Bureau of Indian Affairs Belcourt Police Department, and Bureau of Indian Affairs Officer Mark Houle, Defendants.**

No. A4–03–70.

United States District Court,
D. North Dakota,
Northwestern Division.

Oct. 6, 2004.

Reed Alan Soderstrom, Minot, ND, for Plaintiff.

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion for Partial Summary Judgment, filed on July 7, 2004. On October 1, 2004, the Plaintiff filed a response opposing the motion. For the following reasons, the Defendants' motion is granted in part.

### I. BACKGROUND

On or about November 10, 2001, the plaintiff, Alan Gooden was riding as a passenger in a vehicle being driven by Misty Gooden. The vehicle was stopped by Bureau of Indian Affairs ("BIA") Officers Mark Houle and Brock Baker. The stop was made on Highway 5 in front of the Eastside Station in Belcourt, North Dakota. Officer Houle asked Gooden to get out of the vehicle, turn towards it, and place his hands on the vehicle, which he did. Officer Houle then began to perform a pat down search of Gooden. Gooden contends that he attempted to turn around and communicate with Officer Houle about a knife. In response, Officer Houle allegedly told Gooden to turn back around and face the vehicle and "pushed him hard against the vehicle." Gooden claims that Officer Houle then grabbed him by the back of his coat and tried to throw him to the ground, but Gooden was hanging on to the rack on the top of the vehicle. In an effort to get Gooden to comply, Officer Houle allegedly "smashed" Gooden's index finger with his flashlight, slicing the finger. At that point, Gooden claims Officer Houle used mace on Gooden and threw him to the ground. Allegedly, Officer Houle then pressed his knee into Gooden's neck and "crushed" Gooden's finger with his boot causing it to be severed from the hand. Complaint ¶ 7. As a result of these events, Gooden's right index fingertip was amputated at a level

just proximal to the nail fold and the distal interphalangeal joint. Complaint ¶ 8.

On July 18, 2002, the United States Department of the Interior ("DOI") received Gooden's claim. On April 8, 2003, Gooden's claim was denied by the DOI. Gooden filed a timely action with this Court on June 19, 2003, under the Federal Tort Claims Act. On July 7, 2004, the Defendants filed a Motion for Summary Judgment requesting that Gooden's negligent hiring, training and supervision claims be dismissed. The Plaintiff filed a response opposing the Defendants' motion on October 1, 2004.

## II. STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Graning v. Sherburne County*, 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. LEGAL DISCUSSION

It is apparent from the record that Gooden has exhausted his administrative remedies, a prerequisite to filing a Federal Tort Claims Act in federal court. *See* 28 U.S.C. § 2825(a). The Court must now analyze whether the discretionary function operates in favor of the Defendants.

### A. DISCRETIONARY FUNCTION EXCEPTION

■ It is well-established that Congress has waived the sovereign immunity of the United States by giving district courts jurisdiction over certain torts committed by government employees. 28 U.S.C. § 1346(b). The Federal Tort Claims Act ("FTCA") allows suits against the United States for personal injuries caused by the negligent acts or omissions of any government employee while acting within the scope of his or her employment, "under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b)(1). However, Congress has excepted from this limited waiver "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If a case falls within this statutory exception to the FTCA, the Court lacks subject matter ju-

risdiction. *See Feyers v. United States,* 749 F.2d 1222, 1225 (6th Cir.1984) *cert denied,* 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).

"Though discretionary function is a difficult concept to specifically define, the Supreme Court has stated that it includes initiation of programs and activities as well as determinations made by executives or administrators in establishing plans, specifications or schedules of operations." *E. Ritter & Co. v. Department of Army, Corps of Engineers,* 874 F.2d 1236, 1240 (8th Cir.1989). The discretionary function exception prohibits any claim against the United States that is based upon the exercise or performance of, or the failure to exercise or perform, a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused. 28 U.S.C. § 2680(a). It "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Dykstra v. U.S Bureau of Prisons,* 140 F.3d 791, 795 (8th Cir.1998). Its purpose is to prevent "judicial second-guessing of legislative and administrative decisions grounded in social, economic, and policy through the medium of an action in tort." *United States v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). When properly construed, it "protects only governmental actions and decisions based on considerations of public policy." *Id; see Kane v. U.S.,* 15 F.3d 87, 89 (8th Cir.1994) (day-to-day decisions, made in furtherance of the policy, may be protected under the exception). As a result, its application is a jurisdictional issue which precedes any negligence analysis. *Johnson v. U.S., Dept. of Interior,* 949 F.2d 332, 335 (10th Cir.1992).

The applicability of the discretionary function exception is governed by the nature of the conduct at issue, rather than the status of the actor. *Berkovitz v. U.S.,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). When examining the nature of the challenged conduct, the Court must first inquire as to whether the action is a matter of choice for the acting Government employee. Assuming that the challenged conduct does involve an element of judgment or choice, the Court must then determine whether that judgment "is of the kind that the discretionary function exception was designed to shield." *Id.*

1) WHETHER THE ACTION IS A MATTER OF JUDGMENT OR CHOICE FOR THE ACTING EMPLOYEE

It is well-established that in order to take advantage of the exception, the government must first establish that the employee's action involved judgment or choice. *Demery v. U.S. Dept. of Interior,* 357 F.3d 830, 832 (8th Cir.2004). The United States Supreme Court has articulated a two-part test to be applied in determining whether a particular claim falls under the discretionary function exception to the waiver of sovereign immunity. *See United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The first part of the test requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. If so, the discretionary function exception does not apply because there was no element of judgment or choice in the conduct at issue. *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335. The Supreme Court has

recognized that the requirement of judgment or choice is not satisfied if there is a statute, rule, regulation or administrative policy that specifically prescribes a course of action for an employee to follow.

■■ However, if the challenged conduct is determined to be discretionary, the second part of the *Gaubert* test is to determine whether the conduct is "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. 315, 322–323, 111 S.Ct. 1267. As previously noted, when Congress enacted the FTCA, its desire was to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy. In other words, where there is room for policy judgment and decision, there is discretion of the sort protected by the FTCA.

■ The Court's initial inquiry concerning whether the action is a matter of judgment or choice for the acting Government employee is mandated by the language of the discretionary function exception. *Berkovitz v. U.S.*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Id.* Thus, when a federal statute, rule, regulation, or policy specifically prescribes a course of action for an employee to follow, the exception will not apply. *Id.* Conversely, when no federal mandate is found, the employee's conduct is considered to be the product of judgment or choice and the Court's initial inquiry is satisfied.

In this case, Gooden concedes that the negligent hiring claim falls squarely within the discretionary function exception and stipulates to a dismissal of that claim. *See Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir.1995); *Red Elk v. United States*,

62 F.3d 1102, 1107 (8th Cir.1995) (discussing the applicability of the discretionary function exception to claims of negligent hiring). However, Gooden resists a dismissal of the negligent supervision and training claims.

To support his position, Gooden references several sections from the BIA Law Enforcement Handbook.[1] Most of the referenced sections come from "Volume 4: Training, Chapter 1: Training Requirements" of the BIA Law Enforcement Handbook. Gooden references two separate subsections from a section entitled "Standards for Training Requirements." The subsections read as follows:

LES–4–1–10 *Specialized Training Requirements.* The Director, Office of Law Enforcement Services, in conjunction with the Indian Police Academy identifies the functions for which specialized training is required. The specialized training includes, but is not limited to, the following:

A. Development and/or enhancement of the skills, knowledge, and abilities particular to specialization,

B. Management, administration, supervision, personnel policies, and support services of the function or component, and

C. Supervised on-the-job-training.

*See* Plaintiff's Brief in Opposition to Motion for Summary Judgment, attached Exhibit "A"(emphasis added). Further, Gooden identifies a "use-of-force" section of the BIA Law Enforcement Handbook:

LES–4–1–15 *Use of Force Training.* Before authorizing employees to carry weapons, the program administrator or designee issues copies of use-of-force, firearms, and less than lethal weapons

---

**1.** The Plaintiff attached three excerpts from the BIA Law Enforcement Handbook in his response. The Plaintiff has labeled the documents as Exhibits A, B, and C.

procedures, ensures that they have been trained as required in these standards, and documents both the issuance and the completion of these training requirements. *Mandatory.*

Gooden also submitted additional sections from the BIA Law Enforcement handbook that set forth "pre-service" and "in-service" training that the officers are to receive. *See* Plaintiff's Brief in Opposition to Motion for Summary Judgment, attached Exhibits "B" and "C." Gooden contends that these sections suggest that the Defendants' actions were controlled by regulations or policies and therefore, are non-discretionary. As a result, Gooden alleges that the discretionary function exception of the FTCA is inapplicable. The Court will address the remaining claims of negligent training and negligent supervision in light of the regulations and policies presented.

The Defendants cite to the Ninth Circuit Court of Appeals case of *Nurse v. United States*, 226 F.3d 996 (9th Cir.2000), to support their argument that both claims fall within the ambit of the discretionary function exception. It should be noted that the Defendants have not cited any Eighth Circuit case law regarding negligent training as it relates to the discretionary function exception, nor did the Court locate any such cases. Therefore, this Court will look to the Ninth Circuit's opinion for guidance. In *Nurse*, the court confronted claims for negligent training and negligent supervision brought under the FTCA. The court dismissed both claims under the two-part discretionary function exception test, stating:

> First, the complaint challenges the policy-making defendants' allegedly negligent and reckless employment, supervision and training of the ... defendants. These acts fall squarely within the discretionary function exception. *See Gager v. United States*, 149 F.3d 918 (9th Cir.1998) (government's decision to forego employee training was a discretionary one); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir.1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment," as do hiring decisions); *K.W. Thompson Tool Co., Inc. v. United States*, 836 F.2d 721 (1st Cir. 1988). Therefore, appellant's FTCA claims based on these acts are barred by the discretionary function exception.

*Nurse v. United States*, 226 F.3d 996, 1001–02. A close reading of the case reveals that the court relied on *Gager v. United States*, 149 F.3d 918 (9th Cir.1998), in dismissing the negligent training claim.

In *Gager v. United States*, the plaintiffs were challenging the Postal Services' decision not to train and supervise postal employees in bomb detection. 149 F.3d 918, 920. In *Gager*, the plaintiffs were unable to identify any mandatory regulations, policies, or procedures that required training in bomb detection. Since no regulation, policy, or statute was identified, the Ninth Circuit Court of Appeals concluded that the decision not to train "plainly involve[d] judgment or choice," thereby satisfying the first part of the discretionary function exception test. 149 F.3d 918, 920. The court discussed the second part of the test and concluded that the choice not to train was of the kind that the discretionary function was designed to shield. *Id.* at 921–22. Having satisfied both parts of the discretionary function exception test, the court held that the United States had not waived its sovereign immunity under the FTCA for the negligent training action.

■ While *Gager* involves the same legal issue of whether negligent training falls within the discretionary function exception, the facts of *Gager* are distinguishable from this case. In *Gager*, the court found there was no specific policy, regula-

tion, or rule to provide training. Without such a policy, the court concluded that the decision not to provide training involved judgment or choice, thereby satisfying the first part of the test. In this case, there are specific policies regarding training. The BIA Law Enforcement Handbook has an express policy about mandatory use-of-force training, as well as an additional policy about pre-service and in-service training of officers. If the BIA Law Enforcement Handbook contained no such policies, the holding in *Gager* would be directly on point. In *Gager*, the Ninth Circuit held that negligent training claims also satisfy the second part of the discretionary function exception test. However, this Court is unable to reach the second part of the discretionary function exception test. The Court cannot conclude at this stage that decisions concerning officer training involved judgment or choice due to the mandatory training policies set forth in the BIA Law Enforcement Handbook. *See United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). There are genuine issues of material fact that need to be addressed concerning this claim. Having failed to satisfy the first part of the test, the Court need not analyze the negligent training claim any further. The Court expressly finds that the discretionary function exception does not apply to the negligent training claim.

As to the claim of negligent supervision, the Court finds no specific policy, rule, or regulation on that subject matter. Gooden has cited a subheading that reads "Supervised on-the-job training" for the proposition that a policy does exist, but the section seems inapplicable. *See* Plaintiff's Brief in Opposition to Motion for Summary Judgment, attached Exhibit "A." That sub-

heading appears under the general heading entitled "Specialized Training Requirements." It is unclear from the excerpt provided to the Court whether all officers undergo "specialized training." There is nothing to indicate that Officer Houle was being supervised on the day of the incident, or that he was supposed to be supervised by another officer that day. As such, the policy cited by Gooden does not directly relate to the issue presented. Because no policy, rule, or regulation seems to govern the supervision of Officer Houle, the Court finds that decisions concerning supervision of officers to be a matter of judgment or choice. As such, the first part of the discretionary function exception has been met. The Court must address the issue of whether that discretionary decision satisfies the second prong of the discretionary function exception test, i.e., was the judgment of the kind the discretionary function exception was designed to shield.

### 2) WHETHER THE CONDUCT "IS OF THE KIND THAT THE DISCRETIONARY FUNCTION EXCEPTION WAS DESIGNED TO SHIELD."

For this part of the test, the Court must determine whether that judgment "is of the kind that the discretionary function exception was designed to shield." *Berkovitz v. U.S.*, 486 U.S. 531, 536, 108 S.Ct. 1954. The only types of judgments the discretionary function exception was designed to shield are "governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *see Rosebush v. U.S.*, 119 F.3d 438, 444 (6th Cir.1997) (explaining that the requirement for a policy nexus is an objective not a subjective one). The Court must determine whether the adjudication

of Gooden's claim would require it to second-guess a governmental policy decision.

As previously noted, the Government cites the Ninth Circuit case of *Nurse v. United States*, 226 F.3d 996 (9th Cir.2000), to support its position that the negligent supervision claim is barred by the discretionary function exception. However, the Eighth Circuit Court of Appeals has expressly dealt with claims of negligent supervision in the case of *Tonelli v. United States*, 60 F.3d 492 (8th Cir.1995).

 In *Tonelli*, the plaintiffs filed an action pursuant to the FTCA against the United States alleging negligent hiring, supervision, and retention. The Eighth Circuit discussed all three claims under the discretionary function exception. The court quickly dispensed with the first part of the discretionary function exception test because the plaintiffs did not identify a specific mandatory rule that the defendants failed to follow. The court then addressed the second part of the test; namely, whether decisions in these areas "involve the type of discretion that Congress intended to shield from liability." The Eighth Circuit held that all three of the claims satisfied the second part of the discretionary function exception test. The Court said that "[i]ssues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception." *Id.* (citing *K.W. Thompson Tool Co. v. United States*, 836 F.2d 721 (1st Cir.1988)); *see Kirchmann v. United States*, 8 F.3d 1273, 1277 (8th Cir. 1993) (stating "[i]f arguably based on policy considerations, both negligence in supervising a contractor and the failure to supervise a contractor at all are included in the decisions protected by the discretionary function exception"). As previously discussed, the Court has not been presented with any mandatory policies, policy statements, rules, or regulations regarding supervision as it relates to the negligent supervision claim. Following the Eighth Circuit's holding in *Tonelli*, the Court finds that the claim of negligent supervision satisfies the second part of the discretionary function exception test and should be dismissed.

## IV. CONCLUSION

In summary, the Court finds that the Plaintiff's claims of negligent hiring and negligent supervision fall within the discretionary function exception to the Federal Tort Claims Act's waiver of sovereign immunity. This Court does not have jurisdiction to hear either of those claims. However, the Court finds that the Plaintiff has arguably produced sufficient evidence at this stage to at least raise a genuine issue of material fact concerning the claim of negligent training. Because the BIA Law Enforcement Handbook contains a mandatory policy concerning the use-of-force training, the discretionary function exception does not apply.

The Court GRANTS IN PART the Defendants' Motion for Partial Summary Judgment (Docket No. 13). The Plaintiff will be allowed to pursue the claim of negligent training and the personal injury claim of negligence.

IT IS SO ORDERED.